# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **MIKE HARPER** | § | |
| | § | |
| v. | § | 1-17-CV-01174-AWA |
| | § | |
| **TRAVIS COUNTY EMERGENCY** | § | |
| **SERVICES DISTRICT 5**, *et al.* | § | |

## ORDER

Before the Court is Plaintiff's Opposed Motion for Reconsideration (Dkt. No. 45). No response to the motion was filed.

## I. GENERAL BACKGROUND

Mike Harper brings this case against the Emergency Services District 5 (ESD5) in Travis, County, Texas, and Fire Chief Chris Barron, in his official capacity, for violations of both the United States Constitution and the Texas Labor Code. Harper seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and the Texas Labor Code, as well as compensation, damages, benefits, and other relief under 42 U.S.C. § 1983. In his Complaint, Harper alleges he was unlawfully retaliated against in violation of the First and Fourteenth amendment rights to freedom of speech and freedom of association. In this motion, Harper requests that the Court reconsider its Order granting in part and denying in part Defendants' Motions to Dismiss (Dkt. No. 44).

## II. LEGAL STANDARD

Motions for reconsideration are governed by Rule 59(e) of the Federal Rules of Civil Procedure. *Patin v. Allied Signal, Inc.*, 77 F.3d 782, 785 n.1 (5th Cir. 1996). Rule 59(e) "serve[s] the narrow purpose of allowing a party 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989). Relief under

Rule 59(e) is also appropriate when there has been an intervening change in the controlling law. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). A motion for reconsideration is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of the court's order. *Simon v. U.S.*, 891 F.2d 1154, 1159 (5th Cir. 1990). Reconsideration of an order is an extraordinary remedy that should be used sparingly. *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

### III. ANALYSIS

Harper requests that the Court reconsider its ruling that Harper's claims for damages under § 1983 are barred by the Eleventh Amendment. *See* Dkt. No. 44 at 5 ("any claim for damages against ESD5 or Chief Barron in his official capacity must be dismissed"). Harper is correct—the Court's ruling on this point was in error, and ruled on an issue not expressly raised by the Defendants. The argument raised by the Defendant was limited to a claim that they were immune from suit under the Texas Labor and Government Codes. As a result, neither party briefed the precise issue that the Court ruled on—whether Barron or ESD5 were entitled to the protections of the Eleventh Amendment with respect to Harper's § 1983 claims. Having now considered that issue more carefully, the Court concludes that Harper may pursue a claim for damages against the Defendants under § 1983.

Eleventh Amendment immunity applies not only to actions where a state is actually named as a defendant, but also to "certain actions against state agents and state instrumentalities." *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997). Eleventh Amendment immunity has been extended to state agents and instrumentalities where granting immunity "protect[s] the state treasury from liability that would have essentially the same practical consequences as a judgment against the

State itself." *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979). In determining whether a state instrumentality may invoke immunity, "courts must review the relationship between the state and the entity in question, examining the essential nature of the proceeding, the nature of the entity created by state law, and whether a money judgment against the instrumentality would be enforceable against the state." *Sw. Bell Tel. Co. v. City of El Paso*, 243 F.3d 936, 938 (5th Cir. 2001); *see also, Kirby v. Health Care Service Corp.*, 88 F.Supp. 3d 717, 720 (W.D. Tex. 2015). "While local government entities may, in some circumstances, be considered an arm of the state, thereby deriving the state's Eleventh Amendment immunity . . . independent local political subdivisions are not entitled to such immunity even though they may 'exercise a slice of state power.'" *Sw. Bell*, 243 F.3d at 938.

The Fifth Circuit has stated that an arm-of-the-state analysis requires the examination of "the powers, characteristics and relationships created by state law in order to determine whether [a] suit is in reality against the state itself." *Hander v. San Jacinto Junior College*, 519 F.2d 273, 279 (5th Cir. 1975). It has also noted that "comparisons [between like entities] cannot substitute for a careful examination of the particular entity at issue." *McDonald v. Bd. of Miss. Levee Comm'rs*, 832 F.2d 901, 908 (5th Cir. 1987). The Fifth Circuit has also articulated the factors that should be considered when conducting an arm-of-the-state analysis concerning a particular entity, including whether the state statutes and case law view the entity as an arm of the state; the source of the entity's funding; the entity's degree of local autonomy; whether the entity is concerned primarily with local, as opposed to statewide, problems; whether the entity has the authority to sue and be sued in its own name; and whether it has the right to hold and use property. *Sw. Bell Tel. Co.*, 243 F.3d at 938. The factors are analyzed as a whole, and no single factor is dispositive.

3

ESD5 is an "emergency services district," created by statute. TEX. HEALTH & SAFETY CODE § 775.001(2). An ESD is a "political subdivision of the state" that "may sue and be sued." *Id.* § 775.031(a) and (a)(4). ESDs like ESD5 have a number of powers, including the power to:

1. Acquire, purchase, hold, lease, manage, occupy, and sell real and personal property or an interest in property;

2. Enter into and perform contracts;

3. Appoint and employ necessary officers, agents, and employees;

4. Impose and collect taxes;

5. Accept and receive donations;

6. Contract with other entities, including other districts or municipalities, to make agency services facilities and emergency services available to the district; and

7. Contract with other entities, including other districts or municipalities, for reciprocal operation of services and facilities if the contracting parties find that reciprocal operation would be mutually beneficial.

*Id.* § 775.031. In addition, under Texas law, the board of an emergency services district has taxing authority, and "shall annually impose an ad valorem tax on all real and personal property located in the district and subject to district taxation for the district's support and the purposes authorized by this chapter." *Id.* § 775.074(a). Districts may also adopt a sales and use tax, and "[r]evenue from the tax may be used for any purpose for which ad valorem tax revenue of the district may be used." *Id.* § 775.0751(a).

As the Fifth Circuit has stated, political subdivisions of states are generally *not* entitled to Eleventh Amendment immunity. *Sw. Bell Tel. Co.*, 243 F.3d at 939. Here, not only is the ESD5 a political subdivision, but as the Court conducts the arm-of-the-state analysis, it appears that ESD5's

connection to the state is simply too attenuated to enjoy Eleventh Amendment immunity protection. The enumerated powers of ESD5 and its officers give it a large degree of local control as well as a primary focus on local, rather than statewide, issues. In addition, the ESD5 has the capacity to be sued and as in *Laje*—where hospital districts that were financed through special local taxes separate from state taxes were found to be an independent legal entity in relation to the State of Texas—here too the independent tax base of ESD5 suggests a strong independence from the State of Texas. *Laje v. R.E. Thomason Gen. Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982). Thus, ESD5 is not a state agency, Chris Barron is not a state official, and neither defendant is immune under the Eleventh Amendment from a suit for damages under § 1983.

In its order on the Motion to Dismiss, the Court denied the motion with respect to Harper's request for injunctive relief. This portion of the order merits clarification as well. Barron and ESD5 sought dismissal of Harper's state law claims under the Texas Labor Code and Government Code, arguing that the Texas Legislature had not expressly and unambiguously waived Defendants' sovereign and official immunity from those claims. They argued that governmental immunity extends sovereign immunity protections to the political subdivisions of the state, including its emergency districts, and they were therefore immune from suit under the Labor Code and Government Code. Harper responded that he was not alleging state law violations against ESD5, but rather was only bringing his Labor and Government Code claims against Barron in his official capacity, seeking only prospective injunctive relief, and those claims should thus not be dismissed. *See* Dkt. No. 18 at 6 (citing ¶¶ 82-84 of the Complaint).

In general, though governmental immunity generally bars suits for retrospective monetary relief, it does not bar prospective injunctive remedies in official-capacity suits against government

5

actors who violate statutory or constitutional provisions. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368-69 (Tex. 2009); *Stem v. Gomez*, 813 F.3d 205, 213-14 (5th Cir. 2016); *Agee v. City of McKinney*, 2014 WL 1232644, at *15 (E.D. Tex. Mar. 22, 2014). In *Heinrich*, the Texas Supreme Court reiterated its previous holding that sovereign immunity protects the State from lawsuits for money damages and that political subdivisions of the state are entitled to such immunity. *Heinrich*, 284 S.W.3d at 369; *Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371, 374 (Tex. 2006). The Court has said repeatedly that the Legislature is in the best position to waive or abrogate immunity "because this allows the Legislature to protect its policymaking function." *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002). Despite this, not all suits require legislative permission. As the Texas Supreme Court stated in *Federal Sign*:

> A state official's illegal or unauthorized actions are not acts of the State. Accordingly, an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars. In other words, we distinguish suits to determine a party's rights against the State from suits seeking damages. A party can maintain a suit to determine its rights without legislative permission.

*Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997).

In particular, suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity. To utilize the *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act; "these suits do not seek to alter government policy but rather to enforce existing policy." *Heinrich*, 284 S.W.3d at 372; *Stem*, 813 F.3d at 214. In addition, technically speaking, governmental entities themselves, in contrast to officers in their official capacity, remain immune from suit. *Heinrich*, 284

6

S.W.3d at 372. *Ultra vires* suits cannot be brought against the state, which retains immunity, but must be brought against the state actors in their official capacity. *Heinrich*, 284 S.W.3d at 372, *Tex. Dep't of Ins. v. Reconveyance Servs.*, 306 S.W.3d 256, 258 (Tex. 2010).

A stated, Harper seeks only injunctive relief against Barron in his official capacity on his Texas Labor Code and Government Code claims. The relevant portion of the Labor Code states that "[a]ll persons engaged in any kind of labor may associate and form trade unions and other organizations to protect themselves in their personal labor in their respective employment." TEX. LABOR CODE § 101.001. It further states that a person may not be denied employment on the basis of their membership in a labor union. *Id.* at §§ 101.052 and 101.301(a). Similarly, the relevant Government Code provision states that an individual may not be denied public employment because of their membership in a labor organization. TEX. GOVT. CODE § 617.004. In his Complaint, Harper alleges that Barron took several actions against him because of his membership in a labor union. As stated, to fall within the *ultra vires* exception to sovereign immunity, the plaintiff must allege that the officer acted without legal authority or failed to perform purely ministerial acts. Harper has alleged sufficient facts in his Complaint to state a claim that Barron acted without legal authority when he took steps to terminate Harper based on his membership in a labor union, and thus has a viable *ultra vires* claim against Barron in his official capacity.[1]

---

[1]This conclusion is consistent with that reached in *Dorris v. City of McKinney, Tex.*, 214 F. Supp. 3d 552 (E.D. Tex. 2016), relied upon by ESD5 and Barron. The court in *Dorris* only found that the claims against *the city* should be dismissed, and allowed the claim for injunctive relief against the individual defendants in their official capacity to proceed. *Id*. at 559.

## IV. CONCLUSION

Based on the preceding discussion, therefore, Harper's Motion for Reconsideration (Dkt. No. 45) is **GRANTED**, and Harper may seek monetary damages under § 1983 against ESD5 and Barron, and may pursue injunctive relief under the Texas Labor and Government Codes against Barron in his official capacity.

SIGNED this 3rd day of January, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE