# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **MIKE HARPER** | § | |
| | § | |
| **VS.** | § | **1-17-CV-01174-AWA** |
| | § | |
| **TRAVIS COUNTY EMERGENCY** | § | |
| **SERVICES DISTRICT 5**, *et al.* | § | |

## ORDER

Before the Court are Plaintiff's Opposed Motion to Compel Responses to His Second Request for Production of Documents (Dkt. No. 47); Defendants' Response (Dkt. 52); and Plaintiff's Reply (Dkt. No. 54).

## I. GENERAL BACKGROUND

Mike Harper brought this suit against Travis County Emergency Services District 5 (ESD5) and Fire Chief Chris Barron in his official capacity, alleging that ESD5 and Barron violated his rights under the First and Fourteenth Amendments to the United States Constitution when they fired him for his union-related activities. He also contends that the actions violated the Texas Labor Code and Government Code. Harper seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and injunctive relief (on the Labor and Government Code claims), as well as compensatory damages, lost benefits, and other monetary relief on his claims under 42 U.S.C. § 1983. In this motion, Harper requests that the Court compel the Defendants to produce documents related to disciplinary actions and complaints against other ESD5 employees during the time at issue in this case.

## II. STANDARD OF REVIEW

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the

issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). After a party has attempted in good faith to obtain discovery without court action, that party may move for an order compelling disclosure or discovery. FED. R. CIV. P. 37(a)(1). A party opposing discovery on the basis that it is overbroad and unduly burdensome bears the burden of showing why discovery should be denied. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). "The court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003). The Court has broad discretion when determining whether to issue a protective order and what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

### III. ANALYSIS

This motion relates to two requests for production. In Requests Nos. 29 and 30, Harper sought documents relating to disciplinary actions taken against ESD5 employees, and documents referring or relating to complaints received by ESD5 or its supervisory officials about any ESD5 employee. Defendants object to Request No. 29 (disciplinary actions) as overbroad and not relevant to the subject matter of the current suit. They object to Request No. 30 (employee complaints), claiming it is overbroad and not relevant, and that the documents are privileged under the Federal Privacy Act, the Privacy Protection Act, and the law enforcement privilege. Harper argues that the requests are clearly relevant, as information regarding the department's disciplinary actions against other ESD5 employees is relevant to Harper's claims that he was adversely treated due to his union-

2

related activity. Further, Harper argues that the requests are not overbroad as the universe of employees disciplined is not large, as Barron himself admits. Finally, Harper argues that Defendants have failed to state how or why the privileges cited are applicable.

A.  **Request No. 30**

Defendants asserted the largest number of objections in relation to Request No. 30 and the Court will start there. Defendants rely, in part, on the law enforcement privilege as part of their objection to producing information related to complaints received by ESD5 about any ESD5 employee. Federal courts have recognized a qualified privilege for governmental personnel records, which could include complaints against an officer, disciplinary actions taken, internal investigatory materials, and supervisory evaluations. 5 Martin A. Schwartz, *Section 1983 Litigation Federal Evidence* § 8.06 (2018). The Fifth Circuit has stated that the law enforcement privilege is a "qualified privilege protecting investigative files in an ongoing criminal investigation." *In re U.S. Dept. Of Homeland Sec.*, 459 F.3d 565, 569 (5th Cir. 2006). In determining whether the doctrine applies, the court must balance "the government's interest in confidentiality against the litigant's need for the documents." *Coughlin v. Lee*, 946 F.2d 1152, 1160 (5th Cir. 1991). In particular, courts should consider the *Frankenhauser* factors. *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. Mar. 13, 1973); *In re U.S. Dept. Of Homeland Sec.*, 459 F.3d at 570. The widely-cited *Frankenhauser* test consists of weighing ten factors:

- the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

- the impact upon persons who have given information of having their identities disclosed;

- the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;

- whether the information sought is factual data or evaluative summary;

- whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

- whether the police investigation has been completed;

- whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;

- whether the plaintiff's suit is non-frivolous and brought in good faith;

- whether the information sought is available through other discovery or from other sources; and

- the importance of the information sought to the plaintiff's case.

*In re DHS*, 459 F.3d at 570. The privilege does not apply to "(1) people who have been investigated in the past but are no longer under investigation, (2) people who merely are suspected of a violation without being part of an ongoing criminal investigation, and (3) people who may have violated only civil provisions." *Id*. at 571. Furthermore, the privilege lapses either at the close of an investigation or after a reasonable time. *Id*. "Although a district court has considerable leeway in weighing the different factors . . . the failure to balance at all requires remand . . . to consider the respective interests . . . in the information protected by the law enforcement investigatory privilege." *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988).

In reviewing Request No. 30, it is not at all clear that the law enforcement privilege even applies, as it protects investigative files ***in an ongoing criminal investigation***. Here, nowhere do the Defendants argue that the documents in question—referring or relating to complaints received

4

by ESD5 or its supervisory officials—relate to any ongoing criminal investigation. Even if the files *were* part of an ongoing criminal investigation, the Court finds that the ten *Frankenhauser* factors weigh in favor of releasing the materials in question. In particular, the fact that the information sought is crucial to Harper's case and is not likely available through other discovery or other sources weighs strongly in favor of disclosure.

Evidence of how other employees accused of misconduct were treated is relevant to Harper's claims that he was terminated from his employment with ESD5 due to his union activity in violation of his First and Fourteenth Amendment rights, and in violation of the Texas Labor Code. Therefore, the Court agrees with Harper that the material in question is highly relevant. Being given access to such material would also be in line with other decisions in this circuit that have permitted disclosure of investigative reports and files. See*, e.g.*, *Whitfield v. Riley*, 2009 WL 10679761, at *8 (E.D. La. Oct. 6, 2009); *Walters v. Breaux*, 200 F.R.D 271, 273 (W.D. La. Apr. 18, 2001); *Dinh v. Fenner*, 1987 WL 7911, at *1 (E.D. La. Mar. 11, 1987) *Tyner v. City of Jackson, Miss.*, 105 F.R.D. 564, 566 (S.D. Miss. 1985).

The Defendants also object to Request No. 30 contending that the Federal Privacy Act and Privacy Protection Act shield this material from production. However, the Defendants do not make any effort to justify the privilege claims beyond making a boilerplate argument. As the party resisting discovery, the defendants bear the burden of demonstrating the existence of a privilege. *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985). It is well established that the Privacy Act of 1974 applies only to the actions of federal agencies and it does not apply to the actions of state or local agencies such as ESD5. 5 U.S.C. § 552a; *Davidson v. State of Ga.*, 622 F.2d 895, 896 (5th Cir. 1980); *Dean v. City of New Orleans*, 2012 WL 2564954, at *14

(E.D. La. July 2, 2012); *Williams v. City of New York*, 2014 WL 1383661, at *13 (S.D.N.Y. Mar. 26, 2014). Furthermore, as with the Privacy Act of 1974, the Privacy Protection Act of 1980 is inapplicable here as it relates to searches and seizures by government officers and employees in connection with the investigation and prosecution of criminal offenses. 42 U.S.C. § 2000aa. Therefore, the privilege objections are inapplicable to the present discovery dispute.

Finally, the defendants object to Request No. 30 as overbroad. However, based on the relatively small number of individuals that have been disciplined and the fact that defendant Barron stated that there had been no complaints about employees that did not result in discipline, the Court finds that the universe of complaints to produce is small, and would not be burdensome to produce. Based on the preceding discussion, Defendants' objections to Request No. 30 are overruled, and Plaintiff's Motion to Compel as to Request No. 30 is **GRANTED**.[1]

**B.      Request No. 29**

Request No. 29 requests documents relating to disciplinary actions taken against ESD5 employees. Defendants object to this request, arguing that the request is overbroad and is not relevant to the subject matter in the pending suit. As with Request No. 30, the information related to this request is clearly relevant under Rule 26. Plaintiff Harper brings this suit because he claims he was terminated from his job due to his union activity. Documents that discuss disciplinary actions taken against other ESD5 employees are on their face relevant and are reasonably calculated to lead

---

[1] To the extent there is information in the documents responsive to Requests 29 and 30 that should remain private—such as personal identifying information like social security numbers, personal addresses, or phone numbers—the parties should either agree to the redaction of that information, or enter into a protective order to address the third parties' privacy interests implicated by the disclosure of the information. The local rules contains a form protective order that the Court encourages parties to use should they pursue that route. *See* WD Texas Local Court Rules, Appendix H.

6

to the discovery of admissible evidence. In addition, again, given Barron's statements regarding the small number of individuals who have been disciplined, the Court does not see any reason why the universe of documents relating to disciplinary actions against ESD5 employees would be overly burdensome. Therefore, defendants' objections are overruled and Plaintiff's Motion to Compel as to Request No. 29 is **GRANTED**.

C. **Attorney's Fees**

Finally, Harper requests he be awarded his attorney's fees under Rule 37 for having to file the current motion. Rule 37 states that if a motion to compel is granted, the court *must*, after providing an opportunity to be heard, require the party whose conduct necessitated the motion, the party or attorney advising that conduct, or both, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. FED. R. CIV. P. 37(a)(5)(A). The court may not award fees if: (1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (2) the opposing party's nondisclosure, response or objection was substantially justified; or (3) other circumstances make an award of expenses unjust. *Id.* at 37(a)(5)(A)(i)-(iii). When considering a Rule 37 sanction, the affidavit of movant's counsel can serve as proof of the amount to be awarded. *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002); *Shipes v. Trinity Indus.*, 987 F.2d 311, 323-24 (5th Cir. 1993) Under Rule 37, a party and its counsel "can only be held responsible for the reasonable expenses [including attorney's fees] caused by their failure to comply with discovery." *Chapman & Cole & CCP, Ltd. v. Itel Container Int'l B.V.*, 865 F.2d 676, 687 (5th Cir. 1989).

An award of fees is appropriate here. Counsel for Harper attempted in good faith to obtain the documents in question; documents that are plainly relevant to Harper's claims, and thus should

have been readily disclosed under Rule 26 without having to seek the Court's intervention. Defendants, on the other hand, do not appear to have attempted to resolve the discovery dispute in question in a productive manner, instead resorting to delay and, in at least one of the production requests, resorting to boilerplate claims of privilege. In other words, when looking at the record and defendants' response to Harper's motion under Rule 37, Defendants were not "substantially justified" in their nondisclosure. Further, it is appropriate here to award the fees against both Barron and defense counsel. As set out in the motion to compel, in emails sent to Harper's counsel, defense counsel made it clear that Chief Barron was making the calls on what to produce, and he gave counsel instructions to continue to stand on the objections, even after discussion. *See* Dkt. Nos. 47-7 at 4 ("Chief Barron is driving the objection on my end because of his concerns about the scope and relevance of the request."), and 47-11 at 2 ("I spoke to Chief Barron. After careful consideration, he asked that I stand on the objections he wanted asserted to the broad second requests for production sent by your office."). Counsel bears responsibility as well, however, as he ultimately made the objections—objections here that he should have known lacked merit. This was an avoidable fight, and counsel should have avoided it.

In awarding attorney's fees, it is well-established that the Fifth Circuit uses the lodestar method, which multiplies the number of hours reasonably expended by an appropriate hourly rate in the community for such work. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). Once the initial loadstar amount has been calculated, the court then considers the twelve *Johnson* factors[2] and, in its discretion, adjusts the lodestar amount accordingly. *Johnson v. Georgia*

---

[2] The twelve factors are (1) Time and Labor Involved; (2) The Novelty and Difficulty of the Questions; (3) The Skill Requisite to Perform the Legal Services Properly; (4) The Preclusion of Other Employment by the Attorney Due to This Case; (5) The Customary Fee; (6) Whether the Fee

*Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The first step in the lodestar process is assessing whether a reasonable number of hours were expended on the litigation. In general, "courts customarily require the [movant] to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *Bode v. U.S.*, 919 F.2d 1044, 1047 (5th Cir. 1990). The Court should look at the amount of hours Harper claims to have reasonably expended on the motion and whether, at the time the work was performed (and not in hindsight), a reasonable attorney would have spent the same amount of time. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

Next, in order to determine the reasonable hourly rate for the movant's attorney, courts must consider the attorney's regular rate as well as the prevailing market rate, which is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984). Evidence of the reasonableness of a proposed hourly rate must include an affidavit of the attorney performing the work and information about rates actually billed and paid in similar lawsuits. *Id*. However, a court may use its own expertise and judgment to make an independent determination of the value of an attorney's services. *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976).

Here, Harper has provided his counsel's billing records, but has not provided an associated affidavit or declaration. The Court uses the billing records to compute the lodestar figure. Turning to the hours, the records show that Harper's counsel spent 22.5 hours preparing, researching, and

---

is Fixed or Contingent; (7) Time Limitations; (8) The Amount Involved and the Result Obtained; (9) The Experience, Reputation, and Ability of Counsel; (10) The Undesirability of the Case; (11) The Nature and Length of the Professional Relationship with the Client; and (12) Awards in Similar Cases.

formulating strategy for the current motion.  Next, the Court looks to the rates.  Plaintiff's counsel billed its partners' work at $400 per hour and its associate's work (who did the bulk of the work) at $300 per hour.  Although Harper did not provide any information to allow a comparison of the rates billed with the rates prevailing in the community, the Court, based on its experience and discretion, finds the hourly rates billed to be reasonable.  The lodestar thus comes to a total of $7,210.[3]  Having considered the Johnson factors, there appears to be some duplication in the time spent discussing and emailing about these issues.  Allowing for the recovery of the time spent by the associate on these discussions, but deleting the time spent by the partners in these same discussions, the Court will reduce the partner's hours to the one hour spent by Ms. Mechak revising the motion to compel.  With this change, the total comes to $5,770.

## IV. CONCLUSION

Based on the preceding discussion, the Plaintiff's Motion to Compel is **GRANTED** (Dkt. No. 47) as set forth above.  The additional production ordered shall be made no later than **January 18, 2019**.  Further, pursuant to FED. R. CIV. P. 37, the Court **ORDERS** counsel for Defendants and Chief Barron, jointly and severally, to pay Plaintiff Harper attorneys' fees in the amount of $5,870.

SIGNED this 3rd day of January, 2019.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

---

[3] 4.6 hours @ $400/hr (Woodley & Mechak) = $1,840;  17.9 hours @ $300/hr (Baig ) = $5,370;   $1,840 + $5,370 = $7,210.